(Allen County Court of Common Pleas.)

CATHERINE BRENNEMAN *v.* SAMUEL BRENNEMAN.

1. The property rights of married women in Ohio are fixed by the act of the legislature of March 19, 1887, and the mode of enforcing these rights is prescribed by "Part Three" of the Revised Statues of Ohio, sections 4947 to 6793, inclusive.
2. Under the provisions of "Part Three" of the Revised Statutes of Ohio, a married woman may maintain an action in her own name for the recovery of a money judgment against her husband, notwithstanding the marital relation.

(Decided April, 1895.)

RICHIE, J.

The plaintiff, in her petition, asks judgment against the defendant for money loaned to the defendant. The petition does not disclose the fact that the plaintiff and defendant are husband and wife. The defendant, by his amended answer, as a first defense, avers that he and the plaintiff were married in 1859, and that the marital relation continued until the 31st of July, 1886, when a divorce was granted to defendant, and that he was required to pay the plaintiff $4,000.00 as alimony, in yearly installments of $500.00 each, with three per cent. interest. That defendant paid to plaintiff three installments, amounting to $1,545.00; and that on April 6th, 1889, the plaintiff and defendant entered into an agreement, not in writing, to re-marry, and that in consideration of the agreement of the defendant to again marry the plaintiff, the plaintiff agreed orally to repay to the defendant, all money paid by him to her upon the decree for alimony in the divorce proceedings.

That in pursuance of such agreement the plaintiff and defendant were again married on April 6, 1889; and that said marital relation still exists. That the money sought to be recovered by the plaintiff in this action was paid by her to the defendant in pursuance of said agreement to marry and repay to defendant the money as contemplated by said agreement to re-marry. A general denial was interposed as a second defense. A demurrer was filed to the first defense, which was overruled. The averments of the first defense were put in issue by a general denial.

At the close of all the testimony the defendant asked the court to instruct the jury to return a verdict for the ·defendant, for the reason that the plaintiff could not maintain an action at law for the recovery of a money judgment against her husband while the marital relation continued, which instruction the court refused to give.

The jury having returned a verdict for the plaintiff, the defendant filed a motion for an order setting aside the verdict and for a new trial, which motion was overruled.

The defendant filed a motion for judgment for defendant notwithstanding the verdict, and also a motion in arrest of judgment. While neither of these motions directly raises the question as to whether or not a married woman can maintain an action at law against her husband, yet if no such rights exist the court could not render judgment in this cause in favor of either plaintiff or defendant, it becomes necessary to determine upon these motions, the question as to the right of a married woman to maintain an action at law against her husband. Upon a very full argument upon these motions, counsel have not cited any decisions of the courts of this state which bears directly upon this question; and I am unable to find any adjudicated case which is decisive of this question, and it becomes necessary to carefully consider the legislation of the state of Ohio, to determine whether or not such right exists in Ohio, for at common law a married woman could not maintain such an action in her own name. It is not necessary here to determine what the remedies of a married woman were, or now are, in equity, as no equitable question is involved in this cause.

To "Part Three" of the Revised Statutes, sections 4947 to 6793, inclu-sive, we must look with a view to ascertaining just what remedies are provided for the enforcement of the rights of parties in Ohio, as all the provisions of the Code of Civil Procedure of June 1, 1853, are embraced within "Part Three" of the statutes of Ohio, from section 4947 to 6793, inclusive.

Section 4948 being embraced within "Part Three," and being the second section thereof, provides that: "The provisions of this part, and all proceedings under it shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice; and the rule of the common law, that statutes in derogation thereof should be strictly construed, has no application to this part; but this section shall not be construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement, or of a penal nature."

The only other sections of the remedial statute in which the common law is referred to are sections 4965, defining the duties of clerks of courts, 4970 defining the duties of sheriffs, 4975 as to the survival of causes of action, and 5244 which provides the mode of proving the common law of other states, territories, and foreign countries. Neither of these sections in any manner limits the provisions of section 4948.

It will be observed that section 4948, while it recognizes the rule that statutes in derogation of the common law must be strictly construed, abrogates that rule as to "Part Three," and requires that part to be liberally construed, and retains the common law rule in the construction

of statutes "affecting personal liberty, relating to amercement, or of a penal nature."

This would seem to require a liberal construction of all the provisions of the civil code, those provisions which relate to personal and property rights, and the provisions made for the enforcement of these rights to be liberally construed, in order to promote the object of these enactments and "assist the parties in obtaining justice."

Section 4993 states the general rule: "An action must be prosecuted in the name of the real party in interest." Sections 4994 and 4995 state the exceptions to this general rule, but the plaintiff does not come within either exception.

By section 28 of the code of civil procedure, now section 4996, which which took effect June 1, 1853, it was provided: "When a married woman is a party, her husband must join with her, except where the action concerns her property, when she shall prosecute and defend by her next friend. When the action is between herself and her husband she may sue or be sued alone; but in every such action, other than for divorce or alimony, she shall prosecute and defend by her next friend." (Swan and Critchfield, Volume 2, page 953.)

This remained the law until April 18, 1870, when this section was amended to read: "When a married woman is a party, her husband must be joined with her, except that when the action concerns her separate property, or is between herself and her husband, she may sue or be sued alone; but in every such case her separate property shall be liable for any judgment rendered therein against her, to the same extent as would the property of her husband, were the judgment rendered against him. But in no case shall she be required to prosecute or defend by her next friend." (67 Ohio Laws, 3.)

On March 30, 1874, this section was again amended to read: "Where a married woman is a party, her husband must be joined with her, except that when the action concerns her separate property, or is upon a written obligation, contract or agreement signed by her, or is brought by her to set aside a deed or will; or if she be engaged as owner or partner in any mercantile or other business, and the cause of action grows out of or concerns such business; or is between her and her husband, she may sue and be sued alone." And contains substantially the same provisions as to the liability of her property for judgments in such cases as was contained in the amended section, with the addition: "Provided, that she should be entitled to the benefit of all the exemption laws of the state to heads of families. But in no case shall she be required to prosecute or defend by her next friend." (Vol. 71, p. 47, Ohio Laws).

This section was again amended on January 21, 1879, to read: When a married woman is a party, her husband must be joined with her, except that where the action concerns her separate property, or is upon a written obligation, contract or agreement signed by her, or is brought by her to collect a legacy; or if she be engaged as owner or partner in any mercantile or other business, and the cause of action grows out of or concerns such business, or is between her and her husband, she may sue or be sued alone. And in all cases where she may sue or be sued alone, the like proceedings shall be had, and the like judgment rendered and enforced in all respects as if she were an unmarried woman. And in every such case, her separate property and estate shall be liable for any judgment rendered therein against her to the same extent as would the property of her husband, were the judgment rendered against him; provided, that she shall be entitled to the benefit of all exemption laws of the state to heads of families; but in no case shall she be required to prosecute or defend by her next friend." (76 Ohio Laws, p. 3).

This section as found in Revised Statutes of Ohio of 1880, as section 4994, reads: "A married woman cannot prosecute or defend by her next friend, but her husband must be joined with her unless the action concerns her separate property, is upon her written obligation concerning business in which she is a partner, or is brought to set aside a deed or will or to collect a legacy, or is between her and her husband."

By the act of March 20, 1884, this section was again amended to read: "A married woman shall sue and be sued as if she were unmarried, and her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband." (Ohio Laws, vol. 81, p. 65, Revised Statutes of 1890, p. 1439). This was the law governing the right of the plaintiff to sue at the time this action was commenced.

It appears that under the code of civil procedure as originally adopted, the wife must be joined with her husband in all actions except when it concerned her separate property, in which case she might sue without her husband by her next friend; and by the latter paragraph of that section, when the action was between herself and her husband, she might sue or be sued alone; but in every such action, other than for divorce and alimony, she should prosecute or defend by her next friend. So that the only action under this section of the code of civil procedure, that a married woman could maintain against her husband without the interposition of her next friend, was an action for divorce or alimony; while the right to maintain an action against her husband by her next friend is recognized.

By the first amendment to this section of April 18, 1870, she was authorized, in her own name, without the interposition of a next friend, and without the limitation to the action for divorce or alimony, to maintain an action when it "concerned her separate property or was between herself and her husband," which was an enlargement of her rights as conferred by original section 28 of the code of civil procedure.

By the next amendment of this section of March 30, 1874, her right to maintain an action in her own name was enlarged to not only include actions concerning her separate property, but actions upon a written obligation, contract or agreement, signed by her, or was brought by her to set aside a deed or will; or if she be engaged as owner or partner in any mercantile or other business and a cause of action grows out of or concerning such business; or as between her and her husband she may sue and be sued alone.

The provisions of this section were very much modified by the Act of January 21, 1879, by which she was authorized to maintain or defend an action which, "concerns her separate property, is upon a written obligation, concerns business in which she is a partner, is brought to set aside a deed or will or to collect a legacy, or is between herself and her husband," in which case she was authorized to maintain an action in her own name, but in all other actions her husband must be joined with her under this section.

By the act of March 20, 1884, it is provided: "A married woman shall sue and be sued as if she were unmarried, and her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband;" which apparently places her in the same position that she would be if she was unmarried, or which another individual would be placed in; for, if the action was to be brought by an individual upon a cause of action, which was in favor of him and another individual jointly, such action, under the code, independent of this section, must be brought in the name of the real party in interest; a party joined in interest must be made a party plaintiff, unless he refuses so to do, in which case it would be necessary to make him a party defendant; but if the action was brought

against such individual and a party who was jointly liable with him, both must be made parties defendant, for no judgment could be entered for an individual upon an obligation jointly due him and another, unless such other is made a party to the action. No judgment could be rendered against an individual upon an obligation upon which he and another were jointly liable, unless, within the exception of the code, where service could not be had upon the party so jointly liable ; and, if we are not mistaken in our construction of this section, it was the intention of the legislature to con-fer upon a married woman such rights as she would have if she were un-married ; and this right does not appear to exclude the right to bring an action against her husband for the recovery of a money judgment.

It will be observed that, under this statute and the various amend-ments and modifications of it, this right to bring an action in her own name against her husband, at one time was limited to the actions for di-vorce or for alimony; and the fact that that exception is no longer found in the statute, and no other exception appears, it must have been the in-tention of the legislature to confer upon a married woman a right to main-tain an action against any person, upon any cause of action which she may have against that person, regardless of the relationship which may exist between them.

This view is further supported by an examination of the provisions of the statute, which were in force prior to the passage of the act of March 19, 1887, (Ohio Laws, volume 84, page 132), and were by that act repealed. The sections repealed may be found in the volume of the Revised Statutes of 1880. Section 3103 secured to a married woman the enjoyment of any interest, or estate, legal or equitable, in real property belonging to her at marriage, or which may have come to her during coverture, or purchased with her separate means, together with the rents and profits thereof, and provided that it should remain her separate property and under her sole control ; and authorized her in her own name, during coverture, to con-tract for labor and materials for improving, repairing and cultivating the same, for any period not exceeding three years, and exempted such prop-erty from seizure by legal process, for the debts of the husband during the lifetime of the wife, or any heir of her body, and enjoined the husband from conveying or encumbering it, unless she joined with him.

Section 3109 secured to the wife her personal property, including rights in action belonging to her before marriage, or coming due after mar-riage, or purchased with her separate means, or due as wages for separate labor, or growing out of a violation of her personal rights, with all increase, and directs that it shall remain under her sole control, and "shall not be liable to be taken by any process of law; for the debts of the husband ;" but provides further that if any of this property is reduced to the posses-sion of her husband, with her assent, then it shall be the property of the husband ; but provides, " but personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, un-less, by the terms of said assent, full authority is given by the wife to the husband, to sell, encumber or otherwise dispose of the same for his own use and benefit."

Section 3111 authorized a wife, in case her husband deserts her, or through intemperance or any other cause, should be incapacitated, or neg-lect to provide for his family, to make contracts in her own name, for her own labor, the labor of her minor children, and in her own name to sue and collect for her or their earnings, and authorized her to file a petition against her husband, alleging such incapacity, desertion or neglect, and authorized the court to enter a judgment, vesting her with the rights, privileges and liabilities of a *feme sole* as to acquiring, possessing and dis-

posing of property, real and personal, making a contract and being liable thereon, and suing and being sued in her own name; but provides that the husband shall not be liable on such contracts or for any torts thereafter committed by her.

Section 3112 provided that the "preceding sections shall not affect any rights which vested in any person prior to May 1, 1861.

Sections 3113, 3114, 3116 and 3117, conferred upon a wife certain rights as against her husband, who renounces "the marriage contract, or refuses to live with his wife in the conjugal relation, by joining himslf to a sect or denomination, the rules and doctrines of which require the renunciation of the marriage covenant, or forbid a man and woman to dwell and cohabit together in the conjugal relation, according to the true meaning and intent of the institution of marriage."

Sections 4106, 4107 and 4108, related to the acknowledgment of deeds, and required a separate examination of the wife.

Section 4109 made the same requirements as to powers of attorney.

Section 4128 required the husband to join the wife in any agreement or power of attorney.

Section 4130 secured to the wife certain rights when the husband was an idiot, lunatic or insane person.

Section 4131 pointed out the mode of procedure in such cases.

Section 4132 related to the recording of powers of attorney.

Section 4163 provided as to the distribution of personal estates, and recognized the right of a widow.

Section 4176 related to the curtesy and dower.

Section 4177 provided for tenancy by the curtesy.

Section 4188 provided for the endowment of a widow.

Section 4189 defined what should bar dower.

Section 4190 related to conveyance in lieu of dower.

Section 4191 protected the rights of a widow when she was lawfully ejected from property assigned to her as dower.

Section 4192 provided that the living in adultery of a wife should bar her of dower in her husband's estate.

Section 4193 secured to the wife rights in real estate which had been yielded up by the husband fraudulently.

Section 4194 provided that the widow endowed should not commit waste, and provided a remedy against her in such case.

Section 6194 secured to the widow the entire personal estate in default of issue of the husband.

By the act of March 19, 1887, defining the rights of husband and wife, all these sections have been repealed, or so amended as to limit the rights of the husband, as widower, and give him the same rights in the wife's estate, which the wife theretofore had in the estate of her husband, and by its provisions have placed upon absolute terms of equality both husband and wife.

By section 3112, as amended March 19, 1887, it is provided: "A husband or wife may enter into any agreement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the action of persons occupying confidential relations with each other.

It will be observed that the only restriction placed by this section upon the husband and wife to contract and deal with each other in all matters as to which they might contract if the marital relation did not subsist between them, is the one exception that when the transactions are between themselves, that such transactions shall be controlled by the general rules which govern the action of persons occupying fiduciary relations to each other.

These general rules, referred to in this section, do not preclude persons who occupy confidential relations toward each other, from contracting with each other; but the rule is: "Whenever two persons stand in such relation that, while it continues, confidence is necessarily reposed by the one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or an influence exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position, will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." * * * "The broad principle upon which the court acts in cases of this description is, that wherever there exists such a confidence of whatever character the confidence may be, as enables the person in whom the confidence or trust is reposed, to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him." (2nd Pomeroy's Equity, section 956.)

So that, under this section of the statute, notwithstanding the confidential relation existing between husband and wife, their dealings with each other will be upheld in all cases, except where the one has obtained an advantage over the other by reason of that confidential relation. If advantage is obtained by one over the other by reason of influence resulting from that relation, then, and then only, would such contract be illegal, and would not be upheld by courts of equity.

Section 3113 provides: "A husband and wife, cannot by any contract with each other, alter their legal relations, except they may agree to an immediate separation, and may make provision for the support of either of them and their children during the separation." This section cannot be held to in any way limit or modify the right conferred by section 3112, of the husband and wife to contract with each other as to any other than such agreement, which would in its nature, alter their legal relations to each other as man and wife. They are not by this provision permitted to annul the marriage contract, or make any binding agreement as to the marriage relation, other than that which is contained in this section, 3113.

The act of March 19, 1887, was radical in its provisions, as to property rights of married women, and gives to them all the rights of unmarried women, and authorizes them to contract as if sole, to acquire, hold and dispose of property, and do all other acts which could be lawfully done by their husbands, and places upon them by section 3113 the same restrictions that are placed upon their husbands, and no other.

While section 4948 requires remedial statutes to be liberally construed, where they do not affect personal liberty, relate to amercements or are of a penal nature, section 3117-1, of the act of 1887, abrogates the common law rule, which requires a strict construction of statutes in derogation thereof, and says: "Property includes lands, tenements, and hereditaments, money, goods and chattels, rights and things in action, and evidences of debt; but the enumeration shall not be construed to require a strict construction of other words therein."

Section 3112 says: "A husband or wife may enter into any engagement or transaction with the other, or with any other person which either might if unmarried;" and is it reasonable to assume that the legislature intended to confer these property rights upon a married woman without making any provisions for their enforcement? No such provision is found in the act of 1887; but apparently, it believed the provisions of sec-

tion 4996 were broad enough to enable her to enforce the rights secured by this statute.

The amendment of 1884 of section 4996 gave her the right to sue as a *feme sole*, and the act of 1887 gave her the rights of a *feme sole*.

A careful consideration of the remaining provisions of the act of 1887, and changes and modifications of the rights of married women and their husbands, further support this conclusion.

Under sections 4106, 4107 and 4108, as amended, the distinction in the mode of signing and acknowledging a deed, etc., between a married and unmarried woman, is abolished.

Under original section 4109, a conveyance made under the power of attorney was required to contain the name of a wife and a release of her dower interest in the real estate.

Amended section 4109 omits this requirement.

Section 4129, requiring the husband to join in an agreement or power of attorney, is repealed without any substitute enactment.

Sections 4130 and 4131, which conferred upon the wife certain rights where the husband was insane, etc., are also repealed without any substitute enactment.

By section 4163, the provisions contained in the original section, conferring rights upon the widow, is extended so as to include the widower.

By Section 4176 in the amended section, dower is provided for both the widow and widower.

By original section 4177, it was provided that the widow shall not commit waste; the amendment provides that a tenant for life shall not commit waste, omitting any reference to the widow named in the repealed section.

By section 4188, as amended, both widow and widower are entitled to be endowed.

In amended section 4189, the word "widow" is omitted from the section.

By section 4191, as amended, the right of election is extended to a widow and widower.

By section 4192, as amended, dower is barred to husband or wife living in adultery.

By amended section 4193, the right is extended to the husband as well as the wife where real estate has been fraudulently surrendered by the other.

By amended section 4194 either husband or wife shall forfeit dower by suffering or committing waste.

By section 4194—1 of the amended statute, the estate by curtesy is abolished.

By section 4194—2 of the amended statute, it is provided: "All the provisions of the law relating to the assignment of dower to the wife, shall apply to the assignment of dower to the husband as far as applicable."

It will be remembered that section 4996, permitting a married woman to sue or be sued, was enacted on March 20, 1884, while this act, defining the rights and liabilities of husband and wife, was not passed until March 19, 1887, and must have been taken into consideration by the legislature at the time the latter act was passed. It can hardly be supposed that the legislature would have taken away, by repeal, the right of the wife to apply for redress where her husband was an imbecile, lunatic or insane, or where the husband had abandoned his wife and joined a sect the tenants of which were inimical to the marriage relation, unless the legislature understood that section 4996 afforded to the wife all the remedies which

had been secured to her by these various enactments which were repealed by the act of March 19, 1887.

If there could be any doubt as to the scope and effect of this section 4996, considered alone, when taken in connection with the rule laid down for the interpretation of Part Three, in section 4948, which says, "the provisions of this part, and all proceedings under it, shall be liberally construed in order to promote its objects and to assist the parties in obtaining justice," can it be maintained that the legislature did not intend that the wife should have all the rights and all the remedies as against her husband, which she would have against any other individual if she were a *feme sole*? If the plaintiff was an unmarried woman and had loaned money to the defendant, would it be contended that she could not bring her action at law and recover a judgment against him? And shall we say that when section 4696 says, " that a married woman shall sue and be sued as if she were unmarried," that she shall not have the right to recover as against her husband for money that she has loaned to him? Would this construction be such liberal construction as is required by section 4948, and would it promote the objects sought to be attained by these provisions and " assist the parties in obtaining justice?"

It is clear then, that the right of a wife to maintain an action against her husband is within the plain provisions of section 4996. If she can maintain an action as if she were a *feme sole*, may she not maintain that action at law, or is she required to go into a court of equity to recover a money judgment?

If she were a *feme sole*, she could not maintain an action in equity against the defendant for the recovery of the money due. If this be true, she cannot maintain an action against her husband under section 4996, that she could not maintain if she were a *feme sole*.

These considerations lead me to the conclusion that under our interpretation of section 4996 under the rules laid down by section 4948, the court would not be authorized in holding that the plaintiff had no legal capacity to sue, and that she could not maintain this action against the defendant. The motions are overruled.

*Hutchison & Becker*, for plaintiff.

*D. C. Henderson*, and *Motter & Mackenzie*, for defendant.